**Albert FRADKIN, Plaintiff,**

v.

**William T. ERNST, et al., Defendants.**

**No. C83–1323A.**

United States District Court,
N.D. Ohio, E.D.

June 7, 1983.

480

Gene Mesh, Cincinnati, Ohio, Stephen Lowey, New York City, Alan L. Melamed, Cleveland, Ohio, for plaintiff.

E. Michael Bradley, New York City, Joseph Holden, Akron, Ohio, for defendants.

## ORDER

DOWD, District Judge.

Before the Court is the motion of plaintiff for class action certification and the motion of defendants for dismissal of this action. For the reasons stated below, the

motion to dismiss is denied and the motion for class certification is granted.

## I.

This action was brought by plaintiff to bar the implementation of a stock option plan (Plan) benefiting William Ernst and Henry Fawcett, the principal executives of the Mohawk Rubber Company (Mohawk). The complaint, filed March 25, 1983, alleged a number of violations of the federal securities laws relating to a proxy statement and vote on the Plan. In the complaint, Plaintiff sued on behalf of himself and on behalf of a class of Mohawk shareholders. Plaintiff verified the complaint under oath.

Plaintiff immediately sought a preliminary injunction staying the shareholders' vote on the Plan scheduled for April 12, 1983. With the guidance of Judge Manos of this Court, the issue of preliminary relief was avoided by an agreement to expedite discovery, the scheduling of an early trial and an agreement that the shareholders' vote set for April 12, 1983, would go forward but with the understanding, assuming a favorable vote by the shareholders, that defendants would take no further steps to implement the Plan pending resolution of this lawsuit. At the shareholders' meeting, the shareholders apparently approved the Plan but with the creation of a new issue as to whether a majority of the shareholders actually voted for the Plan.

On April 18, 1983, plaintiff filed an amended complaint in this action. In addition to the allegations of securities law violations, plaintiff also raised a number of state law claims against the defendants. In the amended complaint, plaintiff asserted that he was bringing this action on behalf of himself, as a class action, and as a shareholder's derivative action. The amended complaint was not verified, although plaintiff subsequently submitted a separate verification from Melvin Schear, plaintiff's financial adviser.[1]

Defendants noticed a deposition of plaintiff for May 13, 1983, in Boca Raton, Florida. However, plaintiff did not attend the deposition, citing reasons of ill health. Plaintiff is an elderly, retired man who suffered a stroke in 1980. After a physical examination of the plaintiff and a deposition of plaintiff's physician, it became apparent that, while the plaintiff had some difficulty producing "appropriate" responses to questions, he was capable of giving a deposition. Accordingly, this Court ordered that a deposition of the plaintiff to take place on June 3, 1983.

At that deposition, plaintiff clearly indicated that he understood the general subject matter of the Plan. Deposition at 14, 20, 27, 42–43. He also indicated that he had authorized Mr. Schear to institute this lawsuit on his behalf. *Id.* at 42–43. Further, plaintiff indicated his willingness to incur significant costs in prosecuting the lawsuit, *id.* at 45–46, 49–50, and indicated that he had no expectation of any personal gain from the suit. *Id.* at 82. Most importantly, throughout his deposition, plaintiff indicated that he was bringing this action to protect the rights of Mohawk's shareholders.

Plaintiff demonstrated some unfamiliarity with the specifics of this lawsuit. He admitted that he had not seen the proxy issued in conjunction with the Plan, and indicated his unfamiliarity with previous proxy statements and annual reports of Mohawk. *Id.* at 12–24. He also admitted that he had not read the complaint or amended complaint, *id.* at 38–40, but acknowledged his verification of the original complaint. *Id.* at 62. Finally, plaintiff did not know that the lawsuit named defendants other than Fawcett and Ernst. *Id.* at 6, 67.

On May 13, 1983, plaintiff moved for the certification of a class action pursuant to

---

1. Mr. Schear is a long time business associate of plaintiff's. For a number of years, plaintiff and Schear traded stocks together in a partnership arrangement. More recently, plaintiff has granted Schear a limited authorization to trade stocks and bonds on his behalf. Mr. Schear also does some accounting and tax work for plaintiff. Defendants have also presented some evidence that Schear has a business and personal relationship with Mr. Mesh, plaintiff's counsel.

Fed.R.Civ.P. 23(b)(2). On May 16, 1983, defendants moved for dismissal of the amended complaint and filed a brief in opposition to the motion for class certification. Subsequently, the parties have submitted a series of briefs on these two issues. The Court heard oral argument on the motion on May 31, 1983, ordered the plaintiff to appear for a deposition, and has since reviewed the deposition of plaintiff.

## II. DISMISSAL UNDER RULE 37(d).

■ Defendants' motion to dismiss arises from plaintiff's failure to appear at his deposition noticed for May 13, 1983. Under Fed.R.Civ.P. 37(d) when a party

> fails (1) to appear before the officer who is to take his deposition after being served with a proper notice ... the court in which the action is pending on motion may make such orders in regard to the failure as are just ....

The Rule goes on to authorize the imposition of sanctions under Fed.R.Civ.P. 37(b), including dismissal of the action. The defendants now seek an order of this Court, dismissing this action for plaintiff's failure to appear at the deposition.

Although Rule 37(d) authorizes dismissal, Professors Wright and Miller have suggested that this sanction is appropriate only for the "especially serious disregard of the obligations imposed upon [a party]." *C. Wright and A. Miller, Federal Practice and Procedure:* Civil § 2291. Along these lines, the Supreme Court, in *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095–96, 2 L.Ed.2d 1255 (1958) stated that Rule 37 "should not be construed to authorize dismissal of this complaint because of petitioner's non-compliance with a pre-trial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner." While Rule 37 has been changed since the *Societe Internationale* decision, the purpose of that change was to "bring the rule into harmony with the *Societe Internationale* decision." Note of Advisory Committee on 1970 Amendment.

In this case, given plaintiff's appearance at the deposition on June 3, 1983, defendants' motion is premised solely upon his failure to appear at the May 13, 1983 deposition. It is this failure to appear, standing alone, which must be evaluated in light of the standards set forth in *Societe Internationale.* Recognizing plaintiff's obvious mental and physical infirmities, and his subsequent appearance at a deposition, this Court concludes that his conduct does not rise to the level of willfulness or bad faith required to authorize dismissal.

## III. DISMISSAL OF DERIVATIVE CLAIM.

Defendant has also moved for dismissal of the portion of the amended complaint that is brought as a derivative action because of plaintiff's failure to fulfill the procedural prerequisites of Fed.R.Civ.P. 23.1. In relevant part, that rule states that:

> In a derivative action ... the complaint shall be verified .... The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interest of the shareholders ... in enforcing the right of the corporation ....

Based on the requirements of this rule, defendants seek dismissal because of flaws in the verification of the complaint and amended complaint and because plaintiff's poor health makes it impossible for him to fairly and adequately represent the interests of the other shareholders in the corporation.

### A. *Verification requirement.*

■ Plaintiff verified the original complaint in this case. The amended complaint, however, was not verified. On May 24, 1983, plaintiff filed a "separate verification of Melvin Schear of the amended complaint." [2] The adequacy of the contents of Schear's verification is not in dispute, the

---

**2.** Plaintiff has argued that Schear's verification of the amended complaint will serve as a substitute for his own verification because Schear is a "de facto trustee" for the plaintiff. Because of this Court's analysis of the other issues surrounding verification, the Court need

dispute however centers on the sufficiency of his verification for the purposes of this action.

The leading case on the requirements for verification is *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). In that case, plaintiff, an immigrant with a very limited English vocabulary and practically no formal education, verified the complaint along with her attorney. In her deposition, Mrs. Surowitz indicated that she did not understand the allegations of her complaint, but indicated that she was relying on the advice of her son-in-law, a more experienced investor. The District Court dismissed her complaint because the verification was a "sham," and the Court of Appeals affirmed.

The Supreme Court reversed, finding Mrs. Surowitz's verification adequate. The Court stated that verification rule:

> was not written in order to bar derivative suits. Unquestionably it was originally adopted and has served since in part as a means to discourage "strike suits" by people who might be interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order to get rid of them. On the other hand, however, derivative suits have played a rather important role in protecting shareholders of corporations from the designing schemes and wiles of insiders ....

*Id.* at 371, 86 S.Ct. at 850. The Supreme Court rejected a more stringent verification requirement because, in the Court's view, such a requirement would bar a plaintiff like Mrs. Surowitz from ever maintaining a derivative suit in the federal courts. *Id.* at 372, 86 S.Ct. at 850. As stated by the Supreme Court, therefore, the "verification requirement of Rule 23.1 is intended only to clear the Court of strike suits and not to be a general impediment to shareholder derivative actions. *Markowitz v. Brody,* 90 F.R.D. 542, 549 n. 2 (S.D.N.Y.1981).

In this case, the Court must consider whether Mr. Fradkin's verification meets the requirements of Rule 23.1.[3] In his deposition, plaintiff demonstrated some familiarity with the subject matter of the amended complaint. Further, he indicated that he had authorized the lawsuit. The fact that plaintiff was somewhat unfamiliar with the details of the lawsuit does not render his verification invalid under the reasoning of *Surowitz.* Further, the verification by Mr. Schear serves to support plaintiff's fulfillment of the verification requirements of Rule 23.1.[4]

### B. *Adequate representation.*

Defendants have also raised a question as to whether plaintiff's health prevents him

---

not reach the question of whether a verification by a "de facto trustee" is a substitute for verification by the plaintiff.

**3.** The amended complaint, the subject of this lawsuit, was not verified at the time of its filing. Instead, plaintiff relies upon his deposition and a later sworn verification by Mr. Schear. Upon review, the Court concludes that the timing of these verifications of the amended complaint does not raise an issue as to their sufficiency. Rule 23.1 requires verification of the complaint; it does not specify the timing of that verification. This Court finds that these sworn statements by plaintiff and Mr. Schear are not rendered insufficient solely because of their timeliness.

**4.** The issue of whether someone other than the plaintiff may verify the complaint has been the subject of very limited judicial comment. In *Surowitz,* concurring separately, Justice Harlan stated that the rule "directs that in derivative suit 'the complaint shall be verified by oath' but nothing dictates that the verification be that of the plaintiff shareholders." *Id.* at 374, 86 S.Ct. at 851. In Justice Harlan's view, the affidavit of Mrs. Surowitz' counsel would be adequate for the purposes of the rule. Professor Moore has endorsed Judge Harlan's view. *See* 3B Moore's Federal Practice ¶ 23.1.16 at 62 n. 22 (2d ed. 1982).

This Court has discovered only one reported decision in which the issue of verification by a person other than the plaintiff was considered. In *Hirshfield v. Briskin,* 447 F.2d 694 (7th Cir. 1971), the Seventh Circuit reversed a District Court order dismissing a shareholders derivative action. In that case, the plaintiff verified the original complaint while the amended complaint was verified by one of plaintiff's attorneys. The Court did not specifically address the adequacy of plaintiff's attorneys verification, but did allow the case to proceed as a derivative action.

from fairly and adequately representing the interest of the shareholders. Plaintiff does not seriously contend that he will be able to actively participate in or supervise this litigation. He contends, however, that his personal infirmities do not preclude him from serving as a fair and adequate representative of the absent shareholders.

Before turning to the issue of plaintiff's adequacy for bringing a derivative action, the Court will examine the role of the District Court in ruling on this issue. The Sixth Circuit has stated:

> The issue of whether a stockholder can fairly and adequately represent the corporation and other stockholders in a derivative action under Rule 23.1 addressed itself to the sound discretion of the court. The action of the district court will not be set aside by this court unless we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.

*Owen v. Modern Diversified Industries, Inc.,* 643 F.2d 441, 443 (6th Cir.1981) (citations omitted).

■ Fed.R.Civ.P. 23.1 places the burden of proof on the issue of the named plaintiffs' adequacy to represent the interest of the other shareholders upon the defendants. *See Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 592 n. 15 (5th Cir.1974), *cert. denied* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); *Ohio Sealy Mattress Manufacturing Co. v. Ķaplan,* 90 F.R.D. 21, 25 (N.D. Ill.1980). In reviewing defendants' arguments, this Court "must·be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation." *Kline v. Wolf,* 702 F.2d 400, [Current] Fed.Sec.L.Rep. (CCH) ¶ 99, 120 at p. 95,375–76 (2d Cir.1983). *See Cook Investment Co. v. Harvey,* 20 F.R.Serv.2d 612, 613–14 (N.D.Ohio 1975). In light of these standards, the Court will now consider defendants' claim that the plaintiff will not adequately represent the interests of the absent shareholders.

■ Most of the judicial comment on the standards for determining adequacy of a representative have developed in the context of class actions under Fed.R.Civ.P. 23(a)(4). The adequacy requirements under Rules 23 and 23.1 are virtually identical linguistically and the precedent developed in the context of Rule 23 class actions is applicable to decision on the adequacy issue raised under Rule 23.1. *See C. Wright & A. Miller, Federal Practice and Procedure:* Civil § 1833 (2d ed. 1972).

The Supreme Court commented on the elements of adequate representation in *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975). In that case, the Court said:

> Where it is unlikely that segments of the class appellant represents would have interests conflicting with those she has sought to advance, and where the interest of the class have been competently urged at each level of the proceeding, we believe that the test of Rule 23(a) is met.

*Id.* at 403, 95 S.Ct. at 559. More recently, the Sixth Circuit has stated that:

> There are two criteria for determining whether the representation of the class will be adequate: (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.

*Senter v. General Motors Corp.,* 532 F.2d 511, 524–25 (6th Cir.1976). *See Alexander v. Aero Lodge No. 735,* 565 F.2d 1364, 1374 (6th Cir.1977); *Cross v. National Trust Life Insurance Co.,* 553 F.2d 1026, 1031 (6th Cir. 1977). This latter requirement of "vigorous prosecution" has been further analyzed in *Bowen v. General Motors Corp.,* 542 F.Supp. 94 (N.D.Ohio 1981), aff'd per curiam, 685 F.2d 160 (6th Cir.1982). In that case, then District Judge Contie, stated:

> The question of vigorous prosecution of class claims may be divided into two time frames: (1) whether the named representative and his counsel pursued the investigation of class claims during the pre-

trial discovery stage; and (2) whether the class claims were presented at trial. 542 F.Supp. at 100. In making this inquiry, the Court may consider the conduct of counsel in the litigation. *See Senter,* 532 F.2d at 525; *Bowen,* 542 F.Supp. at 100–102.

In this case, the Court finds the qualifications of plaintiff's counsel particularly critical. This case involves a number of complex issues of securities law. Most of this material is beyond the ken of the average shareholder; counsel's role in this litigation, therefore, is particularly important. Here, counsel for plaintiff has done a thoroughly professional job in preparing this case. Counsel for plaintiff has prosecuted this lawsuit through an extensive round of discovery in a very short period of time, done a highly professional job in briefing the class certification and dismissal issues, and provided extensive trial briefs in response to this Court's trial order. This record of legal representation by plaintiff's counsel indicates that the interests of the class will be adequately represented in a claim prosecuted by this counsel.

Defendants in this case have not produced any evidence suggesting a conflict of interests between the plaintiff and other shareholders of the corporation. In addition, this Court has found plaintiff's counsel to be excellent representatives of the shareholders in this litigation. Absent the imposition of additional requirements for a representative of shareholders·under Rule 23.1, the plaintiff in this case will qualify as an adequate representative.

That final question remains open because of the Sixth Circuit's decision in *Davis v. Comed, Inc.,* 619 F.2d 588 (6th Cir.1980). Recognizing the primary importance of the conflict of interest requirement as a qualification for a class representative, the Sixth Circuit, largely in dicta, stated:

The Courts have examined several factors or elements in determining whether a particular derivative plaintiff can provide the requisite fair and adequate representation. Typically, the elements are intertwined or interrelated, and it is frequently a combination of factors which leads a court to conclude that the plaintiff does not fulfill the requirements of 23.1 (although often a strong showing of one way in which the plaintiff's interests are actually inimical to those he is supposed to represent fairly and adequately, will suffice in reaching such a conclusion). Among the elements which the courts have evaluated in considering whether the derivative plaintiff meets Rule 23.1's representation requirements are: economic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiffs unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interest as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants; and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent.

*Id.* at 593–94. *But see Owen v. Modern Diversified Industries, Inc.,* 643 F.2d 441, 443–44 (6th Cir.1981). In its opinion in *Davis,* which apparently did not include any holding on the issue of the adequacy of the plaintiff as a representative of the shareholders, the Court did not address the claim that the plaintiff was incapable of participating in the lawsuit.

The plaintiff's lack of personal knowledge about the lawsuit was at issue, however, in *Rothenburg v. Security Management Co., Inc.,* 667 F.2d 958 (11th Cir.1982). In that case, the Court concluded that the district court did not abuse its discretion in dismissing plaintiff's derivative action. The Court found that the record demonstrated that Mrs. Rothenburg had acknowledged that "her lack of personal knowledge made her an inappropriate plaintiff.... [Further, she had] displayed an obvious unwillingness to learn about the suit, ... had little to gain from the suit ... [and] displayed no strong commitment to the action." *Id.* at

962. Further, the record indicated that Mrs. Rothenburg had brought the suit in hope of recouping some of her lost investment, not for the purpose of benefiting the corporation, and that she was not supported by the other shareholders of the corporation. *Id.* In light of all of these factors, and because of her lack of knowledge about the lawsuit, the Court affirmed the district court's judgment that Mrs. Rothenburg was an inadequate representative for the shareholders.

Two district courts have further illuminated the reasons for finding inadequate representation because of the representative's lack of personal knowledge. In *Matter of Goldchip Funding Co.,* 61 F.R.D. 592 (M.D.Pa.1974), a case decided under Rule 23(a)(4) and relied upon defendants in this action, the district court found that plaintiffs who lack knowledge of the facts underlying their claim and were relying on there attorneys were inadequate class representatives. Rejecting authorities which stated that the plaintiff's personal characteristics were irrelevant, the Court stated that:

> A proper representative can offer more to the prosecution of a class action than mere fulfillment of the procedural requirements of Rule 23. He can, for example, offer his personal knowledge of the factual circumstances and aid in rendering decisions on practical and non-legal problems which arise during the course of litigation.

*Id.* at 594–95. *See also, Greenspan v. Brassler,* 78 F.R.D. 130 (S.D.N.Y.1978); *Levine v. Berg,* 79 F.R.D. 95, 97–98 (S.D.N.Y. 1978).[5]

Three other district courts have reached contrary conclusions. In *Dorfman v. First Boston Corp.,* 62 F.R.D. 466 (E.D.Pa.1974)

the Court found the class representative adequate under Rule 23(a)(4) despite her lack of understanding of the lawsuit. That court stated that:

> Neither the personality nor the motives of the plaintiffs is determinative of whether they will provide vigorous advocacy for the members of the class. Dorfman is obviously unschooled in the law and was flustered at her deposition but it can hardly be said that she, through her attorney, has been anything but a vigorous and tenacious plaintiff.

*Id.* at 473. In *Fischer v. International Telephone and Telegraph Corp.,* 72 F.R.D. 170 (E.D.N.Y.1976), the Court allowed class certification over objections that the plaintiff would be "unable to adequately protect the interests of the class because of his physical disabilities and his alleged lack of interest and knowledge about the case." *Id.* at 174. Relying on *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1976), the court indicated that "lack of knowledge and interest in a case 'cannot justify [a] court's summary dismissal' of a case." The fact that the plaintiff was 70 years of age and suffered one or more physical disabilities was irrelevant where his attorney had vigorously prosecuted this action. 72 F.R.D. at 174. Most recently, in *Ross v. A.H. Robins Co.,* [current] Fed.Sec. L.Rep. (C.C.H.) ¶99052 (S.D.N.Y. Dec. 4, 1982), the district court allowed a plaintiff to serve as a class representative despite his withdrawal of involvement from the proceedings because of heart ailments. Rejecting defendant's arguments that plaintiff's unavailability for further testimony or depositions disqualified him as a class representative, the court stated that " 'the class representative need not be the best of all

---

**5.** As further support for this proposition, defendants have also cited the cases of *Jaurigui v. Arizona Board of Regents,* 82 F.R.D. 64 (D.Ariz.1979); *Tomkin v. Kaysen,* 69 F.R.D. 541 (S.D.N.Y.1976); and *National Auto Brokers Corp. v. General Motors Corp.,* 60 F.R.D. 476 (S.D.N.Y.1973). Upon review, the Court concludes that these cases are all distinguishable as situations where the plaintiff had demonstrated his inability to represent the class prop-

erly. In *Jaurigui,* plaintiff had delayed over two years before seeking class certification. 82 F.R.D. at 66. In *Tomkin,* plaintiff had indicated that he might not be willing to accept the costs of providing notice should the class be certified. 69 F.R.D. at 543. In *National Auto,* plaintiff was insolvent and was unlikely to vigorously carry on the class representation. 60 F.R.D. at 487.

representatives, but one who will pursue a resolution of the controversy in the interests of the class.' *Dura-Built Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 101 (S.D.N.Y.1981)." (Slip opinion at 3). *See also Lewis v. Curtis,* 671 F.2d 779, 788–89 (3d Cir.1982).

In light of these authorities, the Court will now consider the question of whether plaintiff's limited ability to participate in the lawsuit bars his service as a representative of the shareholder. The Court notes that this is not a case like *Rothenburg,* where plaintiff had an improper motive for bringing the lawsuit. Nor is this a situation like *Goldchip,* where the shareholders' representative would be able to provide significant assistance to counsel with non-legal matters. This case represents a winner-take-all situation surrounding some sophisticated business and legal questions. A lay stockholders' representative would be unlikely to be of much assistance to experienced counsel in this case. This Court finds the reasoning of *Fischer* and *Dorfman* more persuasive. The key element of the shareholders' representation in this case is the competency of plaintiffs' counsel, a question not seriously in dispute. Further, in light of *Surowitz,* this Court finds that lack of knowledge on the part of the named plaintiff is not a sufficient reason for barring a suit from continuing as a derivative action.

The Court, therefore, finds that the defendant has not met its burden of demonstrating that plaintiff "does not fairly and adequately represent the interests of the shareholders," as required by Rule 23.1. Accordingly, the motion to dismiss the derivative claim is denied.

## IV. CLASS ACTION CERTIFICATION.

The Court next turns to consideration of plaintiff's motion for class certification pursuant to Fed.R.Civ.P. 23(b)(2). Plaintiff seeks certification of a class consisting of the "approximately 2600 shareholders of the company and their successors and assigns, exclusive of defendants and members of their families."

Fed.R.Civ.P. 23(b)(2) provides that:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . . .

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or a corresponding declaratory relief with respect to the class as a whole . . . .

Under this Rule, the Court must first analyze the proposed class to see if it meets the prerequisites for a class action under Rule 23(a). The Court may then proceed to analyze the claim under Rule 23(b)(2). *See Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir.1976).

A. *Prerequisites for a Class Action under Rule 23(a).*

Fed.R.Civ.P. 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

On this motion for class certification, the plaintiff bears the burden of proof on all of these elements. *Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir.1976).

1. *Numerousity.* There can be little question that plaintiff has met his burden of proof on the issue of numerousity. The proposed class consists of nearly 2600 shareholders. The Sixth Circuit has held that a class of 35 members is sufficient to meet the requirement of Rule 23(a)(1). *See Afro American Patrolmen's League v. Duck,* 503 F.2d 294, 298 (6th Cir.1974). Plaintiff, therefore, has made a sufficient showing of numerousity to meet this prerequisite for a class action.

2. *Commonality.* Neither can there be any question that "there are ques-

tions of law or fact common to the class" as required by Fed.R.Civ.P. 23(a)(2). The principal issues in this litigation surround the proxy statement and vote taken on the Plan. All of the shareholders claims revolve around the Plan. The Sixth Circuit has specifically found that commonality is routinely present in class actions involving proxy statements. In *Mader v. Armel,* 402 F.2d 158, 161 (6th Cir.1968), *cert. denied* 394 U.S. 930, 89 S.Ct. 1188, 22 L.Ed.2d 459 (1969), the Court stated:

> Proxy statements alleged to contain misrepresentations and material omissions were mailed to all shareholders. Questions of fact and law are therefore common to all of them ... [I]t is a classic example of deception of an entire class ....

*Id.* at 161. This Court, therefore, concludes that plaintiff has shown commonality as required under Rule 23(a)(2).

■■ *3. Typicality.* Under Fed.R.Civ.P. 23(a)(3), plaintiff must show that "the claims or *defenses* of the representative parties are typical of the claims or *defenses* of the class" (emphasis added). In this case, defendants argue that plaintiff is subject to two unique defenses which are not typical of the claims of the class. Specifically, defendants claim that the fact that plaintiff was not misled by the proxy statement distinguishes him from the other shareholders. Further, defendants argue that his failure to vote against the Plan raises defenses of ratification and estoppel.

The presence of defenses unique to the class representative will defeat plaintiff's claims of typicality. In *Koos v. First National Bank of Peoria,* 496 F.2d 1162 (7th Cir.1974), the Court upheld the District Court's denial of class certification where the named plaintiffs were subject to unique defenses. The Court stated,

> Where it is predictable that a major focus of litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is

not a proper class representative .... Had this case proceeded as a class action, much of the Kooses' effort would have necessarily been devoted to their own problems posed by the Section 4(b) defense; this may well have resulted in less attention to the issue which would be controlling for the rest of the class. A representative plaintiff should not be permitted to impose such a disadvantage on the class ....

*Id.* at 1164–65. *See Garonzik v. Shearson Hayden Stone,* 574 F.2d 1220, 1221 (5th Cir.1978); *Zenith Laboratories, Inc. v. Carter Wallace, Inc.,* 530 F.2d 508, 512 (3rd Cir.1976), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *Louis v. Johnson,* 92 F.R.D. 758, 760 n. 1 (E.D.N.Y.1981).

■■ Plaintiff does not dispute that his susceptability to a unique defense will defeat his claim of typicality. He claims, however, that neither of the unique defenses advanced by the defendants are legally sufficient under the securities laws.[6] Plaintiff, therefore, need not be concerned with the defenses raised by the defendants because they will not influence the outcome of this case. In light of plaintiff's position, the Court must now turn to an examination of the decisional law under § 14(a) of the Exchange Act to determine the validity of plaintiff's position.

Before turning to the specific issues raised by the defenses asserted by defendants, it is useful to consider the development of the § 14(a) private right of action. In *J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), the Supreme Court recognized a private right of action for violations of section 14(a). More importantly for the purposes of this opinion, the Court described the basis for the § 14(a) cause of action. The Court stated:

> The injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather from the damage inflicted directly

---

**6.** In reviewing the strength of the defendants' arguments, it should be noted that defendants did not cite any cases directly supporting their

view as to the sufficiency of these defenses in their briefs.

upon the stockholder. The damage suffered results not from the deceit practice on him alone, but rather from the deceit practiced on the stockholders as a group. *Id.* at 432, 84 S.Ct. at 1560. In this manner, the Court made the stockholder as a group, not the individual stockholders serving as plaintiff, the focal point of the § 14(a) cause of action.

This concern with the effects upon the shareholders as a whole, not the individual plaintiff, has been developed in the Supreme Court's later rulings on § 14(a). In *Mills v. Electric Auto-Lite,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Court stated that:

> a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.

*Id.* at 385, 90 S.Ct. at 622. In this manner, the Court believed that it had imposed an "objective test" for determining the effect of a defective proxy. Most recently, in *TSC Industries, Inc. v. Northway Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), the Supreme Court reaffirmed its view that the shareholders as a whole are the relevant indicator in a § 14(a) action. In that case, the Court stated that:

> an omitted fact is material if there is a substantial likelihood that a reasonable shareholder was considered important in deciding how to vote.

*Id.* at 449, 96 S.Ct. at 2132. Again, the Court focused upon a "reasonable shareholder," not the plaintiff in the action.

In light of this authority, the Court now turns to a consideration of relevancy of the specific defenses raised by defendants. The Sixth Circuit addressed the issue of whether a stockholder who was not himself misled by a proxy statement had standing to bring a § 14(a) action in *Dann v. Studebaker-Packard Corp.,* 288 F.2d 201 (6th Cir.1961). In that case, the stockholders had not alleged that they were misled by the proxies

or that they had granted any proxies at all. Regardless, the Court ruled that plaintiff could maintain his action under § 14(a). The Court stated:

> It is not important whether or not the complaining stockholders were deceived— they could suffer equally damaging injury to their corporate interests merely because other shareholders were deceived in violation of federal law. Accordingly, they should be entitled to protect themselves against such violations to the same extent as if they, themselves, were the direct victims of the unlawful deception.

*Id.* at 209. While *Dann* has been criticized on other grounds, it remains good law on this point within the Sixth Circuit. *See Leff v. CIP Corp.,* 540 F.Supp. 857, 865–66 & n. 4 (S.D.Ohio 1982).

This ruling coincides with the principals discussed in *Borak, Mills* and *TSC.* In this type of action, the principal focus is the affect upon the vote as a whole. In that regard, the conduct of the general class of stockholders, not the individual plaintiff, is the relevant issue. As the *Dann* court noted, plaintiffs rights are not protected if he is the only shareholder who is not misled by a deceptive proxy.

The Court also finds persuasive the argument raised by plaintiff's counsel at oral argument. Counsel argued that a shareholder who was not misled must be granted standing to sue under § 14(a) to avoid a Catch-22 in proxy litigation. If a shareholder who is not misled lacks standing to sue, and a shareholder who is misled does not know of any violation, then no one will be available to sue for violations of § 14(a). This result conflicts with the broad remedial purposes of the securities laws and cannot be supported.

 The Court will next turn to defendants' contention that plaintiff's failure to vote against the Plan in the proxy vote raises a defense of ratification. While the *Dann* court did not specifically discuss this issue, the shareholders in that case had not granted proxies and the court's reasoning suggests that it would not consider a share-

holder's failure to vote against a proxy matter as raising a defense of ratification. 288 F.2d at 209. The policy behind this ruling was further developed in *Basch v. Talley Industries, Inc.,* 53 F.R.D. 14, 18 (S.D.N.Y. 1971). In that case, the Court stated that:

Although the defendants claim that discovery is necessary to determine whether the plaintiffs voted for or against the merger or did not vote at all, that type of discovery would not be useful for a determination of this motion [for class certification]. It does not matter how the particular plaintiffs voted. What matters is the deception practiced on other GTC shareholders to induce them to vote for the merger would be sufficient to create liability.

*Id.* at 18. That view has achieved the support of the majority of the courts. *See Edelman v. Salomon,* 559 F.Supp. 1178, 1185 & n. 5. (D.Del.1983).

Accordingly, this Court concludes that neither of the defenses proffered by defendants are sufficient to bar plaintiff's suit under § 14(a). The Court, therefore, finds plaintiff's claims typical of the claims raised by the other class members.

██ *4. Adequate Representation.* Rule 23(a)(4) requires the plaintiff to show that "the representative parties will fairly and adequately protect the interest of the class." The Court has already considered many of the questions raised by this requirement in its discussion of the adequacy of representation under Rule 23.1 with respect to the derivative action.

The Sixth Circuit has stated that "in making the determination of adequacy of representation, the District Court should consider the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Cross v. National Trust Life Insurance Co.,* 553 F.2d 1026, 1031 (6th Cir.1977). This Court has already found that there is no antagonism between plaintiff's claims and those of the other members of the class and that the

ability of his counsel supports his claim of adequate representation.

The lone difference between this analysis and the analysis under 23.1 which might change the result would be the different burdens of proof in the two contexts. Under Rule 23.1, defendants bear the burden of demonstrating that the named plaintiff was an inadequate representative of the shareholders. Under Rule 23(a)(4), plaintiffs bear the burden of proof of demonstrating adequacy. Upon review, this Court concludes that the distinction is not significant and that plaintiffs have met their burden of demonstrating adequacy.

B. *Maintenance of the Class Action under Rule 23(b)(2).*

██ Having determined that plaintiffs have met the prerequisites for a class action under Rule 23(a), the Court will now turn to a consideration of whether plaintiffs may maintain their class action under Rule 23(b)(2). That Rule allows the maintenance of a class action where:

The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The Rule sets forth a two part test; (1) the defendants must have acted on grounds generally applicable to the class, and (2) the appropriate remedy is final injunctive or declaratory relief with respect to the class as a whole.

There can be little doubt that this lawsuit involves the situation where the defendants have acted on grounds generally applicable to the class. The proposed class in this case consists of Mohawk's shareholders. Each of these shareholders have a financial interest in the conduct of the corporation and this lawsuit involves conduct which allegedly violates the rules for the conduct of that corporation's business. The defendants in this suit are the parties who have acted and their conduct has had a similar effect upon all of the members of the class. Plaintiff's

motion, therefore, meets the requirements of this first part of Rule 23(b)(2).

The Rule also requires that the relief in the case involved injunctive or declaratory relief with respect to the class as a whole. The prayer in the amended complaint seeks declarations that the Plan and the options granted thereunder are not effective and termination of the Plan. This constitutes the type of declaratory relief envisioned by Rule 23(b)(2) and the relief will operate with respect to the class as a whole.

This Court, therefore, concludes that plaintiff has met the requirements for certification of a class action pursuant to Fed.R. Civ.P. 23(b)(2). Accordingly, the motion for certification of a class consisting of the approximately 2600 shareholders of the company and their successors and assigns, exclusive of the defendants and members of their families is granted.

### C. Notice Requirements.

Having certified this case as a class action pursuant to Fed.R.Civ.P. 23(b)(2), this Court now turns to consideration of requirements of notice to the members of the class absent from this litigation. Although the Rules require the giving of actual notice in a class action maintained under Rule 23(b)(3), the Rules are silent on the issue of whether notice is required in a class action maintained under Rule 23(b)(2). The Sixth Circuit has adopted the view that notice is not required to absent class members in all cases certified under Rule 23(b)(2). See Alexander v. Aero Lodge No. 735, 565 F.2d 1364, 1374 (6th Cir.1977). In this case, the Court finds no special circumstances which require giving of notice to absent class members. The Court, therefore, declines to require any giving of notice in connection with the certification of the class action.

### V. CONCLUSION.

Accordingly, the motion for class certification of a class consisting of the approximately 2600 shareholders of Mohawk, exclusive of the defendants, is granted. The class is certified pursuant to Fed.R.Civ.P. 23(b)(2). The motion of defendants to dismiss this action is denied.

IT IS SO ORDERED.

