## ALVAH KIMBALL *vs.* ALBERT THOMPSON.
### SAME *vs.* SAME.
### SAME *vs.* SAME.

When several actions are tried together, which it is in the discretion of the judge to direct, the testimony of a witness who is competent in one is not to be excluded, because it is inadmissible in the others, and may possibly have some effect on the decision of them; but, in such case, the jury are to be directed to confine the testimony of the witness to the case in which he is competent.

Where several actions of replevin are tried together before the same jury, by order of the judge, a surety in one of the replevin bonds is a competent witness to testify in the cases in which he is not interested, in the same manner as if the actions had been separately tried; and the party offering such surety as a witness cannot be required, before calling him, to substitute a new surety in his place on the replevin bond.

On the question of fraud in a conveyance of personal property, evidence that the vendee afterwards conveyed a portion of it, with other property, to a creditor of the vendor, as security for the debt, the vendee being also liable therefor as surety, is inadmissible to rebut the evidence of fraud.

A conveyance of personal property, by a debtor in embarrassed circumstances, for the purpose (known to the purchaser) of securing the same from attachment, is void as against creditors, although the debtor, at the time, believes that such conveyance is for the benefit of his creditors, and may intend that his creditors shall ultimately be paid.

If tenants in common of personal property make separate conveyances thereof to the same purchaser, one of which conveyances is fraudulent and void as against creditors, the purchaser cannot maintain replevin for such property against an officer attaching the same as the property of the vendors.

If a debtor, whose goods are attached and replevied, takes advantage of the insolvent law, and the defendant in replevin obtains a verdict, he will be entitled, notwithstanding the insolvency, to judgment for a return; and will thereupon be bound to deliver over the property to the assignee of the insolvent, for the benefit of his general creditors.

THESE were actions of replevin, tried before *Bigelow*, J., in the court of common pleas. The writs bore date, respectively, he 19th of March, and the 28th and 30th of April, 1847.

Before the cases were reached on the trial list, it having been ascertained, on inquiry of the counsel on both sides. that the three cases depended upon the same evidence, and that each of them would occupy a long time in the trial, the presiding judge thereupon stated, that unless the parties could agree, that the trial of one of them should dispose of the others, the cases must be tried together to the same jury.

The counsel for the plaintiff then stated, that it was neces-

sary for him to use the testimony of a witness, who was a surety in the replevin bond in the first-named suit, and the testimony of two witnesses, who were sureties in the replevin bonds in the two last-named suits, and that if the three cases were tried together, the plaintiff might lose the benefit of this testimony. The judge then referred the counsel to the statute provision (Rev. Sts. *c.* 94, § 55,) giving the plaintiff a right to substitute new sureties, in case it should become necessary to use the sureties in a replevin bond as witnesses. When the cases were reached and came on for trial, the parties not having then agreed that two of them should abide the verdict in the other, the judge ordered the cases to be tried at the same time to the same jury.

The defendant, who was a deputy sheriff, claimed the property replevied, in virtue of attachments of the same on writs in his hands against Edward H. Ashcroft and Henry B. Odiorne.

The plaintiff claimed the property, on the ground of a purchase of the same by him of Ashcroft and Odiorne, who were partners and tenants in common, before the attachments; and, for the purpose of establishing this claim, he introduced evidence to show, that bills of sale of the property were made to him by Ashcroft on the 25th of February, and by Odiorne on the 9th of March, 1846; that there was a delivery of the property to him, and an actual possession thereof by him, after the execution of the bill of sale to him by Ashcroft; and that the plaintiff, as a consideration for such sales, transferred to the vendors certain notes, and also gave Ashcroft a bond to save him harmless from all debts and liabilities due at the time of the sale from the firm of Edward H. Ashcroft and company.

The defendant contended, and introduced evidence to show, that the alleged sales from Ashcroft and Odiorne to the plaintiff were intended to hinder, delay and defraud creditors, and were consequently void. Among other things, it appeared in evidence, that the plaintiff, and also Ashcroft and Odiorne, since the commencement of these suits, had respectively taken advantage of the insolvent law.

Kimball *v.* Thompson.

The plaintiff, at the close of his rebutting testimony, offered as witnesses a person who was the surety in the replevin bonds .n the two last-named actions, and one who was the surety u the replevin bond in the first-named suit, and requested the court to permit them to testify. This application was accompanied by affidavits, in which the plaintiff made oath to the facts which he expected to prove by the witnesses; that their testimony was material; and that in the circumstances in which he was situated, he was not able to furnish other sureties in their place.

The presiding judge thereupon inquired, whether the witnesses were offered to prove any particular fact relating specially to the case in which they were not sureties; and the counsel for the plaintiff stated, in answer, that they were offered as general witnesses, to rebut the evidence introduced by the defendant to show that the sales in question were made for the purpose of hindering, delaying and defrauding creditors, and not to any particular facts specially applicable to the case in which they were not sureties. The judge thereupon refused to admit the witnesses, unless other sureties were first substituted for them in the replevin bonds.

The plaintiff also offered, as rebutting evidence, a contract or agreement between himself and Earl P. Mason, dated the 31st of March, 1846, after the attachments made by the defendant, and the commencement of one of the actions of replevin against him. By the terms of this agreement, it appeared, that Ashcroft and Odiorne were indebted to Mason in the sum of $1607·19, which was then due, and for which Mason had as security Loring Pickering's note for $1333·33, indorsed by the plaintiff, and secured by a mortgage of real estate; that for the purpose of relieving the note, and of securing the balance of Ashcroft and Odiorne's debt to Mason, the plaintiff conveyed to him certain articles of personal property, which Mason was to sell in whole or in part, and with the proceeds pay the debt of $1607·19; that some of the property conveyed being then under attachment and replevied by Kimball, it was agreed, if his right to the portion attached should fail, that the residue should be held and

applied, as above stated, and if it should prove insufficient, Mason should have recourse to the note of $1333·33, and the mortgage of the same, for the balance; and that Mason should retain the note and mortgage until the value of the property conveyed should be ascertained, and if the proceeds should prove to be insufficient to pay Ashcroft and Odiorne's note, Mason might then, also, have recourse to the note and mortgage for the residue. The evidence was rejected.

The presiding judge instructed the jury, that a conveyance of property, made by a debtor in deeply embarrassed circumstances, for the purpose of securing the same from attachment by creditors, or of putting it beyond the reach of the ordinary process of law, and taken by the vendee with a knowledge of this purpose, and to aid in effecting it, was fraudulent and void as to the creditors of the vendor; that if the jury, in the present case, were satisfied by the evidence, — the burden of proof being on the defendant, — that Ashcroft and Odiorne, or either of them, being in insolvent circumstances, made the sales to the plaintiff, for the purpose and with the intent of securing their property from attachment, so that it could not be reached by the ordinary process of law, and that the plaintiff, at the time of such sales, or of either of them, knew of the purpose and intent of the vendors and participated therein, then the conveyances were fraudulent and void as to creditors, and the plaintiff could not maintain these actions; and that if they should find that such were the intent and purpose, on the part of the vendors, and that the plaintiff participated therein and aided in effecting such purpose, the sales would be fraudulent and void as to creditors, although the vendors, at the time of making such sales, might have believed that it would be better for their creditors to make them, and have intended in the end that their creditors should receive payment of their debts.

The jury were also instructed, that if they were satisfied by the evidence, that either of said sales, that from Ashcroft or that from Odiorne to the plaintiff, was made with the intent and purpose aforesaid, participated in and aided by the plaintiff, as aforesaid, then the plaintiff could not maintain replevin against the defendant.

The jury returned a verdict for the defendant in each case; and the plaintiff thereupon alleged exceptions.

It was further objected, in this court, that if a new trial should take place, and the defendant obtain a verdict, he would not be entitled to a return, because Ashcroft and Odiorne, the debtors, having gone into insolvency, since the commencement of these actions, and their property assigned accordingly, the attachments made against them by the defendant were thereby dissolved.

*J. A. Andrew* and *I. Story, Jr.*, for the plaintiff.

*G. F. Farley*, for the defendant.

WILDE, J.    At the trial of these actions, it was ordered by the presiding judge, that they should all be tried at the same time, and by the same jury, and to this order the plaintiff's counsel excepted.    Generally it is within the discretionary power of the presiding judge, in the trial of cases by the jury, to determine when and how the same shall be tried; and to the exercise of such a discretionary power no exception can be sustained.    It was so decided in the case of *Witherlee* v. *Ocean Ins. Co.* 24 Pick. 67, in conformity with a well-known and reasonable rule of practice.

It is contended for the plaintiffs, that this rule is limited to cases depending on the same principles and evidence, and that in this case the evidence would not have been the same if separate trials had been allowed; as the surety in the replevin bond in the first-named suit would have been a competent witness in the two other suits, and so the sureties in those suits would have been competent witnesses in the first suit.    There seems to be weight in this objection, but it was overruled on the ground that by the Rev. Sts. *c.* 94, § 55, the plaintiff had a right to substitute new sureties, and thereby to qualify the other sureties as competent witnesses.    But we are of opinion that the plaintiff could not reasonably be required to procure new sureties, which it might not be in his power to do; and as none were procured, the sureties were competent witnesses, and should have been admitted to testify in the cases in which they were not interested, in the same manner as they might have done if the trials had been

separate. The jury might have been directed to confine the testimony of the witnesses to the cases in which they were not interested; but in those cases their testimony should not have been excluded, although it might possibly and wrongfully have some effect on the decision of the other cases in which they were not competent. The rules of evidence were the same, whether the actions had been tried together by the same jury, or separately by different juries; each action was to be tried on its merits, and consequently all competent evidence was admissible. On this ground, therefore, the plaintiff is entitled to new trials; but the other exceptions, we think, cannot be sustained.

It has been objected that the plaintiff's contract with one Mason had a tendency to prove, that the sales of property from Ashcroft and Odiorne, alleged to be fraudulent, were made in good faith; or, if not, that the fraud was thereby purged. But we find nothing in that contract which can legally have any such tendency. That contract was made after the commencement of these actions, or one of them, and it contains certain stipulations which were to take effect, if, on the trial of the case or cases, it should be adjudged that the plaintiff's title to the property replevied was not valid, which certainly cannot be material in the decision of the question of title.

Exceptions were taken to the instructions to the jury; in the first place, because they were instructed, that the conveyance of property made by a debtor in embarrassed circumstances, for the purpose of securing the same from attachment, the purpose being known to the purchaser, would be void as against creditors, although the debtor might, at the time of the conveyance, have believed that it would be better for his creditors to make the conveyance, and intended in the end that his creditors should be paid. That this part of the instructions was perfectly correct we cannot doubt. Such a conveyance, although it does not indicate any moral turpitude, is made void by the 13 Eliz. *c.* 5, which declares, that all conveyances made for the purpose and intent to delay, hinder, or defraud any creditor or creditors, shall be utterly void **as**

against such creditor or creditors. The language of the statute is clear, and fully supports this part of the instructions; and so are the authorities.

Such a conveyance also is void as against our law authorizing attachments. Every attempt, by a debtor, to violate or evade the law, so as to delay his creditors in the collection of their debts, to the hinderance of the due course and execu tion of the law, is unquestionably fraudulent and void as against such creditors. But, undoubtedly, an insolvent debtor may make a valid sale of his property, if made *bona fide*, and for a full and valuable consideration. So he may prefer one creditor to another, if not restrained by our insolvent laws; although other creditors may be thereby incidentally delayed or hindered in the collection of their debts. And there is nothing in the instructions to the jury inconsistent with this distinction. According to the instructions, the defendant was bound to satisfy the jury, that the sales to the plaintiff, or one of them, were made for the purpose and with the intent to secure the property from attachment, so that it could not be reached by the ordinary process of law; and that the plaintiff, at the time of the sales, knew of such purpose and intent, and participated therein. *Cadogan* v. *Kennett*, Cowp. 432; *Estwick* v. *Caillaud*, 5 T. R. 420; *Meux* v. *Howell*, 4 East, 1; *Harris* v. *Sumner*, 2 Pick. 129; *Widgery* v. *Haskell*, 5 Mass. 144; *Hendricks* v. *Robinson*, 2 Johns. Ch. 283; *Trotter* v. *Watson*, 6 Humph. 509; *Bridge* v. *Eggleston*, 14 Mass. 245.

But it is further objected, that the instruction was erroneous in authorizing the jury to find for the defendant, if they were satisfied from the evidence, that either one of said sales was void as aforesaid. The answer to this objection is, that the property replevied was held in common by the vendors Ashcroft and Odiorne, and if either deed was void, the plaintiff would have a title to only an undivided share of the property, for which replevin could not be sustained. *Hart* v. *Fitzgerald*, 2 Mass. 509. If either Ashcroft or Odiorne was the owner of an undivided share of the property attached, the taking by the officer was lawful. If hereafter

he should sell the whole property or convert it, and the plaintiff could prove he was entitled to a share thereof in common, he would have a remedy in another form of action, to which the judgment in this case would be no bar.

Another question, although not raised by the exceptions, has been argued by counsel, as it may be raised, should a verdict on the new trial be again for the defendant.

It is objected by the plaintiff's counsel, that the defendant would not in that case be entitled to a return of the property replevied, because Ashcroft and Odiorne, since the commencement of these actions, have petitioned for the benefit of the insolvent laws, and all their property has been duly assigned under the petition by the master in chancery, whereby the attachments made by the defendant have been dissolved. But we are of opinion that, notwithstanding the dissolution of the attachments, the defendant is entitled to a return; whereupon he will be bound to deliver over the property to the assignee for the benefit of the general creditors; and if he should fail so to do, the assignee will have his remedy against a responsible person. This property, having been unlawfully taken from the possession of the officer, ought to be restored to him for the benefit and security of whoever may have a right to it, and is not to be left in the possession of the plaintiff, who has no title, and has been adjudged an insolvent debtor.     *Exceptions sustained, and new trials granted.*